UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| SAMUEL IKECHUKWU NNAMDI,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, EDEN DETENTION CENTER, et al.,<br><br>Respondents. | No. 6:26-CV-248-H |

**ORDER**

Before the Court is Samuel Ikechukwu Nnamdi's emergency motion for a temporary restraining order, administrative stay, expedited consideration, and expedited habeas relief. Dkt. No. 2. Because he fails to demonstrate a substantial likelihood of success on the merits, the motion is denied.

1. **Factual and Procedural Background**

Nnamdi, a Nigerian national, has lived in Texas for seven years. *Id.* ¶ 6. In 2019, while in removal proceedings, an immigration judge granted him withholding of removal from Nigeria. *Id.* ¶ 5. Earlier this month, however, Nnamdi was arrested by immigration authorities in McKinney, Texas. *Id.* ¶ 7. He alleges that this arrest was effected "without presenting or serving an administrative warrant to him." *Id.* Since his arrest, he has remained in immigration custody—first at the Bluebonnet Detention Facility, then at the Eden Detention Center. *Id.* ¶ 8.

U.S. Immigration and Customs Enforcement personnel "orally told [Nnamdi] that he would be removed to Ghana," despite a lack of any "written notice identifying Ghana, the legal basis for its selection, the anticipated removal date, or the procedure and period for

presenting Ghana-specific fear claims." *Id.* ¶ 9. Earlier this week, "officers instructed [Nnamdi] to pack his belongings, placed him in restraints, and moved him to a holding cell in apparent preparation for removal." *Id.* ¶ 10. Nnamdi states that he "has unequivocally communicated that he fears removal to Ghana" due to his lack of "lawful status there, and onward removal to Nigeria," where it was "already determined that his life or freedom would be threatened on account of religion." *Id.* ¶ 11. This is because Ghana's refugee process "presents a practical possibility of detention and onward removal for a Nigerian national without established legal status." *Id.* ¶ 13. Nnamdi's immigration counsel formally raised Nnamdi's fear of removal to Ghana and is seeking appropriate relief in immigration court. *Id.* ¶ 12.

**2. Legal Standard**

Federal Rule of Civil Procedure 65 authorizes courts to issue temporary restraining orders and injunctions. A temporary restraining order, or TRO, is "simply a highly accelerated and temporary form of preliminary injunctive relief." *Hassani v. Napolitano*, No. 3:09-CV-1201, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009). Thus, the party seeking a TRO or preliminary injunction must satisfy the same four-factor standard for preliminary injunctive relief. *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 645 (N.D. Tex. 2021). The party seeking relief must show (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) the balance of hardships weighs in the movant's favor; and (4) issuing the injunction will not disserve the public interest. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013).

A TRO, like any injunction, is an "extraordinary remedy." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976). "The decision to grant [such relief] 'is to be treated as the

exception rather than the rule.'" *Jones v. Bush*, 122 F. Supp. 2d 713, 718 (N.D. Tex. 2000) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)). To prevail, the movant "must satisfy a cumulative burden of proving each of the four elements" for injunctive relief. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). "Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the TRO or preliminary injunction." *Speed v. America's Wholesale Lender*, No. 3:14-CV-3425, 2014 WL 4755485, at *1 (N.D. Tex. Sept. 24, 2014) (emphasis in original).

## 3. Analysis

Nnamdi is not entitled to emergency relief because he fails to demonstrate a substantial likelihood of success on his claims. Because he is subject to a valid final order of removal, the Court lacks jurisdiction to stay his removal. His third-country removal claims place him in the *D.V.D.* class, and thus those claims cannot be maintained as individual causes of action. And his arrest and detention do not merit habeas relief. Because he cannot show a substantial likelihood of success on the merits, his motion (Dkt. No. 2) is denied.

### A. The Court lacks jurisdiction to stay Nnamdi's removal.

First, to the extent Nnamdi seeks a stay of removal (*see* Dkt. No. 2 at 1), that request is denied for lack of jurisdiction. Under 8 U.S.C. § 1252(g), the Court lacks jurisdiction to "hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to . . . execute removal orders against any alien." *See also Idokogi v. Ashcroft*, 66 F. App'x 526, 526 (5th Cir. 2003) ("The relief sought by Idokogi in the district court is connected 'directly and immediately' with the Attorney General's decision to commence removal proceedings against him. The district court therefore correctly

determined that it lacked jurisdiction to stay the order of removal." (internal citation omitted)). The Court therefore denies Nnamdi's request to stay his removal from the United States.

### B. Nnamdi's claims regarding the sufficiency of his notice of third-country removal belong in the *D.V.D.* class action.

Second, Nnamdi contests the procedural sufficiency of his pending removal to Ghana. Dkt. No. 2 at 5–6. But as an alien subject to a final order of removal (*see* Dkt. No. 1 at 1) who ICE plans to deport to a third country, Nnamdi is a member of the *D.V.D.* class. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 392–93 (D. Mass. 2025). The class in that litigation seeks the same remedy as Nnamdi: an injunction ordering the respondents "to provide meaningful notice and opportunity to present a fear-based claim before executing removal to a third country." *See id.* at 386. Accordingly, this Court should not interfere. *See Green v. McKaskle*, 770 F.2d 445, 446–47 (5th Cir. 1985) ("[E]quitable claims by members of the . . . class, which are comparable to those claims litigated and under ongoing review and supervision of the court in the . . . class action, should not be maintainable as individual causes of action.").

### C. Nnamdi's arrest and subsequent detention do not merit habeas relief.

Finally, Nnamdi is not likely to succeed on his claim that "the warrantless arrest and continued detention require immediate release or prompt individualized custody review." Dkt. No. 2 at 8–9. For starters, he fails to explain why habeas is an appropriate remedy for a warrantless arrest. But whether construed as a statutory claim or a constitutional claim, he is not entitled to relief in habeas.

As another judge in the Fifth Circuit has explained, "habeas has traditionally been a means to secure release from unlawful detention," whereas "suppression of evidence is the

typical remedy" for a Fourth Amendment violation. *Kanda v. Cole*, __ F. Supp. 3d __, No. 5:26-CV-158, 2026 WL 1014400, at *4 (S.D. Tex. Apr. 10, 2026) (citation modified). And other cases considering Fourth Amendment violations in the removal context occur only after a "petitioner has exhausted their administrative remedies through Immigration Court and the Board of Immigration Appeals." *Ruiz v. Olson*, No. 4:26-CV-051, 2026 WL 483478, at *12 (W.D. Ky. Feb. 20, 2026) (collecting cases); *Solis-de Patino v. Pitts*, 823 F. Supp. 2d 457, 464 (W.D. Tex. 2011); *see also De La Paz v. Coy*, 786 F.3d 367, 376–77 (5th Cir. 2015) (detailing the DHS's regulatory scheme to address Fourth Amendment violations). Once Nnamdi exhausts his administrative remedies for the purportedly unlawful arrest, he may obtain review in the Fifth Circuit. *See* 8 U.S.C. § 1252(a)(2)(D); *see also Ruiz*, 2026 WL 483478, at *12–13. Today, however, his warrantless-arrest claim fails.

Most puzzling of all is Nnamdi's claim that his continued detention is unlawful. *See* Dkt. No. 2 ¶¶ 37–39. He states this claim in conditional terms: "If [the] [r]espondents cannot demonstrate a lawful basis for the . . . present confinement, immediate release under reasonable supervision is an appropriate remedy." *Id.* ¶ 38. He does not provide any supporting citation.

It is well-settled that aliens subject to a final order of removal must be detained under 8 U.S.C. § 1231(a). To be sure, the United States Supreme Court has held that an alien may be detained post-removal order only for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). But a period reasonably necessary to bring about the alien's removal from the United States is presumptively six months. *Id.* at 701. Nnamdi, by contrast, has been detained for ten days. Dkt. No. 1 ¶ 2. And, in any case, he "does not contend that eight days of detention is

already unconstitutionally prolonged, and he does not premise his request on a statutory entitlement to bond under 8 U.S.C. § 1226(a)." Dkt. No. 2 ¶ 37.

Having failed to demonstrate that he is entitled to habeas relief for a warrantless arrest or that his detention is unlawful, Nnamdi cannot show a substantial likelihood of success on the merits.

**4. Conclusion**

The Court thus denies Nnamdi's motion for TRO, an administrative stay, expedited consideration, and expedited habeas relief (Dkt. No. 2) because he failed to carry his burden as to the first element needed to obtain such relief. However, as noted in the Court's Order to Show Cause (Dkt. No. 5 at 1), Nnamdi's motion to expedite habeas proceedings was granted, and thus the Court will resolve his pending habeas petition (Dkt. No. 1) on an expedited timeline.

So ordered on July 16, 2026.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE